IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KIM HART,<br>    PLAINTIFF, | |
| v. | CASE NO.:  3:24-cv-464 |
| NICKEL CITY GROUP LLC,<br>    DEFENDANT. | |

## COMPLAINT AND JURY DEMAND

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2. This action arises out of the violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") by Nickel City Group, LLC (hereinafter referred to as NCG or Defendant).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that Defendant transacts business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

4. Plaintiff resides in this District.

### PARTIES

5. Plaintiff, Kim Hart ("Plaintiff"), is an adult individual residing in Elkhart County, Indiana, and is a "consumer" and "person" as those terms are defined by the FDCPA.

6. NCG is a Delaware company operating from Depew, New York, according to its most recent filing with the New York Secretary of State.

7. NCG can be served in Indiana via its registered agent, Registered Agent Solutions, Inc., at 6018 N. Keystone Ave., Indianapolis, IN, 46220.

8. NCG advertises on its website (https://ncgmgt-llc.com/about-us) (last visited May 22, 2024):

   > When dealing with accounts receivable, the likelihood that some consumers will not pay on their accounts within a reasonable period is common. When this happens, hiring a third-party collector becomes necessary for bookkeeping or recording purposes.
   >
   > Luckily for you, NCG , LLC is offering a professional debt collection service that promises outstanding results. Your business' success is our success.
   >
   > What makes our collection agency different and better is the care that we take. We are diligent and thorough in our debt collections efforts and we believe that if an account can be resolved, we will resolve it. Our percentage of collections is greater than many larger collection agencies and our contingency rates are better than industry standard rates.

9. As will be described below, NCG received a past due account and attempted to collect that account from Plaintiff.

10. As will be described below, NCG directed communications to Plaintiff for the purpose of collecting the Account in question from him.

11. The principal purpose of NCG is the collection of debts using the mails and telephone and other means.

12. NCG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property, or services which are the subject of the transactions are primarily for personal, family or household purposes.

13. NCG is a "debt collector" as the term is defined and used in the FDCPA.

## FACTUAL ALLEGATIONS

14. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on

2

a personal account (hereinafter the "Account"). The funds received as a result of the Account were not used for any business or commercial purposes.

15. The Account constitutes a "debt" as that term is defined by the FDCPA.

16. The Account allegedly went into default with the original creditor.

17. After the Account allegedly went into default, the Account was purchased by or otherwise transferred to NCG for collection.

18. NCG then contacted Plaintiff directly to collect on the Account from Plaintiff.

19. Plaintiff admits the existence of the Account, but disputes the amount NCG attempted to collect from her.

20. Plaintiff requests that NCG cease all further communications regarding the Account.

21. On approximately May 8, 2024, NCG left a voicemail for Plaintiff that stated:

> Kimberly Hart. My name is Process Server David Brown. I've been retained to execute a summons either your place of residence or your place of employment between the hours of 12 and 5 PM today. As per law, I must give you your filing party's contact information because you do have a legal right to attempt to stop your summons being served. Now the name of the filing party on your document is Client Services. Their telephone number is (716) 314-1946. But I must hear from your filing party before my scheduled attempt with some type of stop order to prevent me from executing your summons. If I do not hear from this company when I meet with you, you're required to show me two forms of identification when you sign for your document. If I cannot make contact with you, this will be put in hands of your county. They'll proceed with your court date. If you miss your court date, you will lose your case.

22. NCG used the language transcribed above for the purpose of making Plaintiff believe that NCG was an attorneys office and that NCG was having Plaintiff served with a lawsuit and a summons by a process server for the purpose of thinking that she was being sued and would have to go to court and that she could lose her case.

23. The statements, direct or implied, that a NCG was using a process server to serve a summons on Plaintiff at her home or at her place of employment and that a court date would be set were false, misleading and deceptive statements.

24. These statements would cause the least sophisticated consumer to believe that NCG was a law firm, that she was being sued on the account and that she would have to go to court.

25. These statements caused Plaintiff to believe that NCG was a law firm, that she was being sued on the account and that she would have to go to court.

26. NCG also sent Plaintiff a text message on May 8, 2024, which stated:

    KIMBERLY HART, please contact NCG.  We have made several attempts to reach you by phone and mail regarding important documents in our office pertaining to your name and SSN, that require your immediate attention.  Please call the office at 267-755-7482 and refer to file number 2698405. Reply stop to opt out.

(emphasis in original).

27. NCG used the language of the text message transcribed above for the purpose of making Plaintiff believe that NCG was an attorneys office and that NCG had legal paperwork for Plaintiff with a "file number" for the purpose of thinking that she was being sued and would have to go to court and that she could lose her case.

28. This language complimented the voicemail message described above to further make Plaintiff believe that she was being sued and would have to go to court.

29. The statements, direct or implied, that NCG was an attorneys office and that NCG had legal paperwork for Plaintiff with a "file number" and that she was being sued and would have to go to court were false, misleading and deceptive statements.

30. These statements would cause the least sophisticated consumer to believe that NCG was an attorneys office and that NCG had legal paperwork for Plaintiff with a "file number" and that she was being sued and would have to go to court.

4

31. These statements caused Plaintiff to believe that NCG was an attorneys office and that NCG had legal paperwork for Plaintiff with a "file number" and that she was being sued and would have to go to court.

32. On or about May 13, 2024, NCG caused another voicemail to be left for Plaintiff which stated:

    > Ms. Hart, this is Mitch Tanner at Client Services, ma'am. Today is the deadline, uh, for you to basically give me a ring back and let me know what your intentions are as far as getting this matter resolved for yourself. If I do not hear from you, ma'am, I have to forward your file out of the office of processing and at that time, you may have to deal with this matter from a legal standpoint. If you are serious about getting this matter squared away for yourself, ma'am, it's imperative that you do contact me back immediately. My direct number here is 716-314-1946, ma'am.

33. NCG used the language transcribed above for the purpose of making Plaintiff believe that NCG was an attorneys office and that Plaintiff would be sued and would have to go to court if she did not return the call and make payment arrangements.

34. The statements, direct or implied, that a NCG was an attorneys office and that Plaintiff would be sued and would have to go to court if she did not return the call and make payment arrangements were false, misleading and deceptive statements.

35. These statements would cause the least sophisticated consumer to believe that NCG was an attorneys office and that Plaintiff would be sued and would have to go to court if she did not return the call and make payment arrangements.

36. These statements caused Plaintiff to believe that NCG was an attorneys office and that Plaintiff would be sued and would have to go to court if she did not return the call and make payment arrangements.

37. On or about May 13, 2024, NCG caused another voicemail to be left for Plaintiff which stated:

    > [inaudible] This call is from NCG, LLC. You have an important matter with our company that deserves your immediate attention. Please call me back as soon as possible at the following number 929-280-2423. Again, the number is 929-280-2423. When returning this call, please refer to reference number 2698405. Again, the reference number is 2698405. If you wish to speak to someone now regarding your account, press zero. To repeat this information, press the star key. Thank you. Goodbye.

38. NCG used the language of the voicemail message transcribed above for the purpose of making Plaintiff believe that NCG was an attorneys office and that NCG had an "important matter" that needed "immediate attention" for the purpose of thinking that she could be sued if she did not immediately call back and repay the Account.

39. This language complimented the voicemail message received just before (and which is described above from the same day) to further make Plaintiff believe that she was being sued and would have to go to court.

40. The statements, direct or implied, that NCG was an attorneys office and that NCG had an "important matter" that needed "immediate attention" and the implication that she could be sued if she did not immediately call back and repay the Account were false, misleading and deceptive statements.

41. These statements would cause the least sophisticated consumer to believe that NCG was an attorneys office and that NCG had "important matter" that needed "immediate attention" for the purpose of thinking that she could be sued if she did not immediately call back and repay the Account.

42. These statements caused Plaintiff to believe that NCG was an attorneys office and that NCG had "important matter" that needed "immediate attention" for the purpose of

6

thinking that she could be sued if she did not immediately call back and repay the Account.

43. On or about May 15, 2024, NCG caused another voicemail to be left for Plaintiff which stated:

> Uh, good morning Ms. Hart. This is Mitch Tanner at Client Services. Uh, this is the last courtesy call I can give you regarding your account here in the office. Uh, you did ask me to hold this for you, which I did. I can no longer do that, ma'am. If I do not hear from you by end of business, I will have to lift my signature off of this and forward it back out of my office. If you are serious about getting this matter resolved, it's imperative that you do contact me immediately so I can do something about this thing for you. 716-314-1946, ma'am.

44. NCG used the language transcribed above for the purpose of making Plaintiff believe that NCG was an attorneys office and that Plaintiff would be sued and would have to go to court if she did not return the call and make payment arrangements.

45. The statements, direct or implied, that a NCG was an attorneys office and that Plaintiff would be sued and would have to go to court if she did not return the call and make payment arrangements were false, misleading and deceptive statements.

46. These statements would cause the least sophisticated consumer to believe that NCG was an attorneys office and that Plaintiff would be sued and would have to go to court if she did not return the call and make payment arrangements.

47. These statements caused Plaintiff to believe that NCG was an attorneys office and that Plaintiff would be sued and would have to go to court if she did not return the call and make payment arrangements.

48. NCG also called Plaintiff's mother and informed Plaintiff's mother that NCG was attempting to serve a summons on Plaintiff and requested location information for Plaintiff.

7

49. NCG intended for this message to be conveyed to Plaintiff and to scare Plaintiff into believing that a process server was looking for her to serve her with a summons.

50. These statements to Plaintiff's mom were false, misleading and deceptive as no summons was being served on Plaintiff.

51. These statements to Plaintiff's mom would cause the least sophisticated consumer to believe that NCG was attempting to serve her with a summons and that she was being sued and would have to go to court.

52. These statements caused Plaintiff to believe that NCG was attempting to serve her with a summons and that she was being sued and would have to go to court.

53. The statements to Plaintiff's mother also conveyed information to a third party (Plaintiff's mother) without Plaintiff's consent to do so.

54. Plaintiff was humiliated and embarrassed when Plaintiff's mother informed Plaintiff that she had received a call about a summons being served on Plaintiff.

55. All of the false statements described above were made for the purpose of scaring Plaintiff into making a payment on the Account.

56. In one or more communications with Plaintiff, NCG failed to inform Plaintiff that NCG was a debt collector, that NCG was attempting to collect a debt and/or that any information obtained would be used for the purpose of debt collection.

57. In one or more communications with Plaintiff, NCG failed to provide meaningful disclosure of its identity.

58. NCG never provided Plaintiff with notice of Plaintiff's rights to dispute the Account or request validity of the Account as required by 15 U.S.C. § 1692g.

59. NCG's collection practices caused Plaintiff to suffer fear, anxiety, stress, sleeplessness, mental anguish, embarrassment, mild depression and/or distraction from normal life.

60. NCG 's purpose for calling Plaintiff was to attempt to collect the Account.

61. The telephone calls described above each constituted a "communication" as defined by FDCPA § 1692a(2).

62. The only reason that NCG and/or its representative(s), employee(s) and/or agent(s) made telephone call(s) to Plaintiff was to attempt to collect the Account.

63. The only reason that NCG and/or its representative(s), employee(s) and/or agent(s) had telephone conversation(s) with Plaintiff was to attempt to collect the Account.

64. All of the conduct by NCG and/or its employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

65. As a consequence of NCG's collection activities and communication(s), Plaintiff seeks damages and attorneys fees and costs pursuant to the FDCPA.

## **RESPONDEAT SUPERIOR**

66. The representative(s) and/or collector(s) at NCG were employee(s) and/or agents of NCG at all times mentioned herein.

67. The representative(s) and/or collector(s) at NCG were acting within the course of their employment at all times mentioned herein.

68. The representative(s) and/or collector(s) at NCG were under the direct supervision and control of NCG at all times mentioned herein.

69. The actions of the representative(s) and/or collector(s) at NCG are imputed to their employer, NCG.

## COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. §1692, et seq. BY NICKEL CITY GROUP LLC

70. The previous paragraphs are incorporated into this Count as if set forth in full.

71. The act(s) and omission(s) of NCG and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. §1692c(b) and 15 U.S.C. §1692d generally and specifically §1692d(2)&(6) and 15 U.S.C. §1692e generally and specifically §1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11)&(13)&(14) and §1692g(a).

72. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from NCG.

## JURY TRIAL DEMAND

73. Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

74. Judgment in favor of Plaintiff and against Nickel City Group LLC as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); and

    d. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Jeffrey D. Wood
_____
Jeffrey D. Wood, Esq.
ArkBN: 2006164
THE WOOD FIRM, PLLC
11610 Pleasant Ridge Rd.
Suite 103 – Box 208
Little Rock, AR  72223
TEL:  214-914-8374
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff